## MARCUSON v. YORKVILLE BANK.

(Supreme Court, Appellate Term, First Department.　April 28, 1914.)

1. BANKS AND BANKING (§ 149*)—GUARANTEED INDORSEMENT—LIABILITY.

　Where Y. bank accepted from an indorsee a deposit of a cashier's check drawn by P. bank on C. bank, and guaranteed the indorsements thereon, and received payment through the clearing house, Y. bank was liable for any loss to C. bank by its being required to repay the money to P. bank, because of an unauthorized indorsement.

　[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 453, 454;　Dec. Dig. § 149.*]

2. BANKS AND BANKING (§ 142*)—DEPOSITOR OF CHECKS—LIABILITY.

　A depositor of a check purporting to be properly indorsed stands in the position of guarantor to the bank, and must repay the amount of the check to the bank bound to make up a loss occasioned by an unauthorized indorsement of the check.

　[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 410–413;　Dec. Dig. § 142.*]

3. BANKS AND BANKING (§ 149*)—CHECKS—ERRONEOUS INDORSEMENT—FAILURE TO DISCOVER—LIABILITY.

　The failure of a bank drawing a check to pay a depositor to detect at once an erroneous indorsement in Hebrew is not such gross negligence as will estop it from making a claim against the bank on which the check was drawn, and which paid the check; and the former bank is entitled, within Negotiable Instruments Law (Consol. Laws, c. 38) § 326, to a year from the date of the return of the check to make its claim.

　[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 453, 454;　Dec. Dig. § 149.*]

　Bijur, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by Sadie R. Marcuson against the Yorkville Bank.　From a judgment for defendant, plaintiff appeals.　Affirmed, with leave to appeal to the Appellate Division.

Argued January term, 1914, before LEHMAN, PAGE, and BIJUR, JJ.

Samuel J. Rawak, of New York City (Jacob M. Marcuson, of New York City, of counsel), for appellant.

Theodore Schultheis, of New York City, for respondent.

PAGE, J.　One Morris Kushner, who was ill of tuberculosis in a hospital, wrote a letter to the Public Bank, in which he had a deposit of $70, requesting the Public Bank to pay whatever money he had on deposit to his son, Harry Kushner.　Harry Kushner presented the letter to the Public Bank, and received a cashier's check, drawn by the Public Bank upon the National Bank of Commerce, payable to the order of Morris Kushner.　Harry Kushner indorsed the check in Hebrew in his own name and delivered it to Sadie R. Marcuson, the plaintiff, who then indorsed it and delivered it to the defendant, Yorkville Bank.　The Yorkville Bank received payment through the New York Clearing House, and indorsed it with the usual receipt, "In-

dorsements guaranteed." About 11 months thereafter the National Bank of Commerce wrote the Yorkville Bank that a claim had been made by the Public Bank that the money had been paid without the indorsement of the payee, Morris Kushner, upon the check. After discovering that such was the fact, and that the check was not paid upon the order of Morris Kushner, the Yorkville Bank repaid the money to the National Bank of Commerce, who in turn refunded it to the Public Bank.

[1, 2] It is apparent that the Public Bank did not honor the request of Morris Kushner to pay the balance of his account to Harry Kushner, but drew its check payable to the order of Morris Kushner upon the National Bank of Commerce, thereby giving to Morris Kushner the power to make such disposition of his balance as he might desire. The National Bank of Commerce was bound to pay the check as directed. The Yorkville Bank presented the check to the Bank of Commerce with indorsements guaranteed, and was bound to make good any loss occasioned by lack of proper indorsement upon the check. It is not disputed that the name of the payee was not indorsed upon the check and that the payment was unauthorized. The Bank of Commerce was bound, therefore, to repay the money to the Public Bank, and the Yorkville Bank was bound by its indorsement to make up the loss to the Bank of Commerce. The plaintiff stood in the position of guarantor to the defendant, and was in turn bound to repay the amount of the check to it.

If the facts showed an intention upon the part of the Public Bank to make Harry Kushner the actual payee of the check, and that he was the individual to whom payment should have been made, a different question would have been raised; but in my opinion there is no evidence of such intention. The teller of the Public Bank testified that it was the custom of the bank, when it received orders of this kind from its depositors, to make the checks given thereon payable to the depositor himself, in order to protect the bank. This and the check itself are the only evidence of the intention of the drawer of the check presented to the court, and a finding of any other intent than that stated in the check would be totally unsupported by proof.

There is no injustice in this disposition of the case. If Harry Kushner is entitled to the money as donee causa mortis or inter vivos, or by assignment, as claimed by the appellant, the money is in the Public Bank in the name of Morris Kushner, deceased, and can be obtained by Harry Kushner upon proof of his right to it, or by the plaintiff by an appropriate action in equity.

[3] The indorsement upon the check, being in Hebrew letters, might well have been mistaken by English tellers for that of the payee, and failure of the Public Bank to detect the error at once was for this reason not such gross negligence as would estop them from making their claim against the Bank of Commerce. The case is in effect the same as if the indorsement had been forged, in which case the drawer is allowed by statute one year from the date of return of his checks to make the claim. Negotiable Instruments Law (Consol. Laws, c. 38) § 326.

The judgment should be affirmed, with costs, with leave to appeal to the Appellate Division, First Department.

LEHMAN, J., concurs.

BIJUR, J. I dissent. This case arose out of the following circumstances: One Morris Kushner, on or about June 2d, having an account in the Public Bank, wrote to the bank a letter requesting it to give the balance "of the money in the bank to his son," one Harry Kushner. Harry presented this letter to the bank, which, on June 5th, gave him what they called a "money order," but was substantially a check of the Public Bank on the National Bank of Commerce to the order of Morris Kushner for $70. Harry indorsed this check in his own name and delivered it to the plaintiff, who deposited it in her account with the defendant, receiving credit therefor. The check was in due course of business returned to the Public Bank, which paid it. Defendant's cashier testified that 11 months later the Public Bank wrote to the National Bank of Commerce, which apparently showed the letter to the witness, to the effect that a claim had been made to the Public Bank "that Mr. Kushner never received value" on this check, and that that was the reason that the defendant returned the $70 to the Public Bank. He testified that his bank did not stop to inquire into the circumstances, but "we took the say-so of the other bank." He also testified that "the indorsement of the payee is missing," and that he had told the plaintiff of that fact, and that the "money order" had come back from the Public Bank owing to that fact, and had asked her to reimburse the money. When she refused to do so, the amount was charged to her account. Plaintiff sues for this credit, which was thus canceled.

Upon this record I can find no valid defense to the action. Defendant, having credited plaintiff with the amount of a check issued by the Public Bank, which was immediately paid by that bank, undertook to cancel the credit because the Public Bank 11 months later wrote a letter the purport of which is testified to so vaguely as to leave its actual contents seriously in doubt. Clearly, however, neither the defendant nor the Public Bank claims that there was fraud on the part of Harry Kushner, nor mistake on the part of the Public Bank in paying the check without the express indorsement of the payee. Defendant apparently relies solely on the fact that the check was not indorsed by Morris Kushner. The Public Bank, having, however, voluntarily and in the regular course of business paid or cashed its own check, when thus indorsed, had no further claim in the premises. The failure of defendant to plead that the Public Bank paid the check by mistake is significant, as indicative of the fact that it paid the check in pursuance of the original order of its depositor. Its cashier testified:

"In a case like that, where a man is sick and needed the money, we always obliged him, and give him a money order made out to our depositor to protect the bank."

It is not clear why the bank required any protection other than the written order of its depositor, and, from the record, that would

appear to be the reason why it paid its own check to the party whom its depositor had indicated, notwithstanding that it had been made out to the order of the depositor himself.

Judgment reversed, and a new trial granted, with costs to appellant to abide the event.